IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES ALLEN SMITH,                §
Executor of the Estate of         §
Algerine Allen Smith              §
                                  §
            Plaintiff,            §
                                  §
v.                                §     CIVIL ACTION NO. H-07-2743
                                  §
UNITED STATES OF AMERICA          §
                                  §
            Defendant.            §
                                  §

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff James Allen Smith's ("Smith") Motion for Summary Judgment (Docket Entry No. 11) and defendant the United States of America's ("United States" or "the government") Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment (Docket Entry No. 13). For the reasons stated below, Smith's motion for summary judgment will be denied, and the United State's cross motion for summary judgment will be granted.

## I. Background

Algerine Allen Smith died on November 16, 1990, leaving behind a small fortune.[1] On December 26, 1990, the probate court of

---

[1] See Plaintiff's Original Complaint, Docket Entry No. 1, Exhibit C.

Harris County, Texas appointed Smith as the executor of Algerine's estate ("the Estate").[2]

The Estate filed an estate tax return on July 12, 1991, reporting a tax liability of $60,164.54 and including a payment for that amount.[3]  The Commissioner of the Internal Revenue Service ("the Commissioner") issued a notice of deficiency in 1994.[4]  The notice of deficiency asserted that the Estate owed an additional $663,785 and an accuracy related penalty of $132,785.[5]  The Estate filed a petition in the United States Tax Court challenging the deficiency.[6]  On February 18, 1998, the Tax Court held that there

---

[2] Plaintiff's Original Complaint, Docket Entry No. 1, Exhibit A.

[3] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 1.

[4] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 1.

[5] United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 1.

[6] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 1.

was a deficiency in estate tax of $564,429.87, but that no accuracy related penalty should be assessed.[7]

On March 31, 1998, the Estate remitted a payment of $646,325.76.[8] On May 12, 1998, the Commissioner assessed an estate tax deficiency of $564,429.87 in accordance with the Tax Court's holding and also assessed underpayment interest of $410,848.76.[9] The Commissioner allocated $501,377.87 of the Estate's March 31, 1998, payment toward the tax deficiency and credited an income tax overpayment of $63,052.00 from tax year 1992 toward the deficiency.[10] The sum of the income tax credit and the payment

---

[7] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2.

[8] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2, 4.

[9] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2, 4. "'Underpayment interest' is interest the IRS charges taxpayers who fail to pay the correct amount of tax on the due date. It accrues from the due date of the return until the date paid." Estate of Smith v. Comm'r of Internal Revenue (Estate of Smith III), 429 F.3d 533, 534 n.1 (5th Cir. 2005).

[10] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross (continued...)

allocated toward the deficiency totaled $564,429.87, the amount of the deficiency as determined by the Tax Court.   The remaining $144,947.89 of the Estate's payment was allocated toward underpayment interest.[11]

The Estate appealed the Tax Court's holding to the United State Court of Appeals for the Fifth Circuit challenging, inter alia, the Tax Court's methodology for calculating a particular estate tax deduction.[12]   The Fifth Circuit, in Estate of Smith I, issued an opinion on December 15, 1999, reversing the Tax Court, vacating its judgment, and remanding the case with direction to recalculate the amount of the deduction in accordance with its opinion.[13]

On November 21, 2001, the Tax Court issued an order pursuant to the Fifth Circuit's instructions fixing the amount of the deduction in question.[14]   The Estate and the Commissioner then submitted an agreed Computation For Entry of Decision pursuant to

---

[10](...continued)
Motion for Summary Judgment, Docket Entry No. 13 at 2, 4.

[11] Affidavit of Harold A. Chamberlain in Support of Motion for Summary Judgment (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2, 4.

[12] See Estate of Smith v. Comm'r of Internal Revenue (Estate of Smith I), 198 F.3d 515, 517 (5th Cir. 1999).

[13] Id. at 532.

[14] See Estate of Smith v. Comm'r of Internal Revenue, 82 T.C.M. (CCH) 909 (2001).

Tax Court Rule 155,[15] which the parties stated was in accordance with the Tax Court's November 21, 2001, order.[16]   The agreed computation expressly stated that "[t]he details supporting the above computation are set forth on attached pages 2 to 7, inclusive."[17]   The computation stated that the total estate tax liability of the estate was $385,747.17 and that the estate had

_____

[15] The version of Rule 155 in effect at the time read, in relevant part,

> (a) Agreed Computations.  Where the Court has filed or stated its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency, liability, or overpayment to be entered as the decision. If the parties are in agreement as to the amount of the deficiency or overpayment to be entered as the decision pursuant to the findings and conclusions of the Court, then they, or either of them, shall file promptly with the Court an original and two copies of a computation showing the amount of the deficiency, liability, or overpayment and that there is no disagreement that the figures shown are in accordance with the findings and conclusions of the Court. In the case of an overpayment, the computation shall also include the amount and date of each payment made by the petitioner. The Court will then enter its decision.

T.C.R. 155(a).

[16] United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2; see Plaintiff's Original Complaint, Docket Entry No 1, Exhibit C.

[17] Plaintiff's Original Complaint, Docket Entry No 1, Exhibit C at 4.

made a total of $624,594.41 in tax payments.[18]  The tax payments consisted of the initial payment of $60,164.54, the 1992 income tax overpayment credit of $63,052.00, and the $501,377.87 portion of the March 31, 1998, payment allocated toward tax liability.[19]  The computation concluded that the estate had overpaid its estate tax liability by $238,847.24.[20]  The calculation included a "Total Federal Interest Deduction," which was equal to the agreed amount of total underpayment interest due: $209,943.54.[21]

On January 24, 2002, the Tax Court entered a Decision incorporating the parties' agreed computation "as the findings of the Court," and concluded that "an overpayment in estate tax in the amount of $238,847.24" had occurred.[22]  The Estate again appealed the Tax Court's decision, but the Fifth Circuit, in Estate of Smith II, affirmed the Tax Court.[23]

Pursuant to the Tax Court's ruling, the Commissioner adjusted the Estate's account by making a tax abatement in the amount of

---

[18] Plaintiff's Original Complaint, Docket Entry No. 1, Exhibit C at 4.

[19] Id.

[20] Id.

[21] Id. at 9.

[22] Plaintiff's Original Complaint, Docket Entry No. 1, Exhibit B.

[23] See Estate of Smith v. Comm'r of Internal Revenue (Estate of Smith II), 54 F. Appx. 413 (5th Cir. 2002).

$238,847.24—the agreed amount of estate tax overpayment.[24]   The
Commissioner also made an underpayment interest abatement in the
amount of $180,564.04.[25] After these abatements, the Commissioner's
accounting showed that the Estate had overpaid estate tax by
$238,847.24, but still owed $85,336.83 in assessed but unpaid
underpayment interest.[26]   The Commissioner deducted the asserted
$85,336.83 in unpaid underpayment interest from the $238,847.24 tax
overpayment and issued a refund to the Estate on May 13, 2002, for
the difference: $153.510.41, plus interest.[27]

In October of 2003, the Commissioner realized that a mistake
had been made with regard to the amount of the $180,564.04
underpayment interest abatement.[28]   The Commissioner made an

---

[24] United States' Response to Plaintiff's Motion for Summary
Judgment and United States' Cross Motion for Summary Judgment,
Docket Entry No. 13, Exhibit B.

[25] Id.

[26] See United States' Response to Plaintiff's Motion for
Summary Judgment and United States' Cross Motion for Summary
Judgment, Docket Entry No. 13 at 3-4; Plaintiff's Original
Complaint, Docket Entry No. 1, Exhibit C at 10, Form 3623 Statement
of Account.   This amount of assessed, but unpaid interest was
calculated by beginning with the initial assessment of underpayment
interest, $410,848.76, then subtracting the $144,947.89 portion of
the March 31, 1998, payment allocated toward underpayment interest,
then further subtracting the $180,564.04 abatement.  $410,848.76 –
$144,947.89 – $180,564.04 = $85,336.83

[27] See Plaintiff's Original Complaint, Docket Entry No. 1,
Exhibit E.   The total amount of the refund, including interest
allowed to the Estate, was $210,467.35.   Id.

[28] See United States' Response to Plaintiff's Motion for
Summary Judgment and United States' Cross Motion for Summary
Judgment, Docket Entry No. 13 at 3.   The initial error arose
(continued...)

7

additional abatement of underpayment interest in the amount of $20,341.20 and issued a refund to the Estate in that amount, plus interest, on October 6, 2003.[29]

The Estate, not satisfied with the refunds received, filed a Motion for Proceeding to Enforce Overpayment Decision in the Tax Court under I.R.C. § 6512(b)(1) and Tax Court Rule 260.[30]  The Estate asserted that the Commissioner was required by the Tax Court's January 24, 2002, order to refund the full $238,847.24 overpayment, that the Commissioner had only refunded $153,510.41, and that the Estate was entitled to an additional $85,336.83, plus interest.[31]  The Tax Court granted the Estate's motion, holding on July 13, 2004, "that the [E]state is entitled to a refund of the $238,847.24 overpayment, plus interest on the overpayment, less any amounts that respondent has previously refunded with respect to the $238,847.24 overpayment."[32]

---

[28](...continued) because the Commissioner had erroneously applied the 1992 income tax overpayment to the estate tax deficiency as of March 15, 1996, whereas the correct date was April 15, 1993.  <u>Id.</u> at 3 n.2, Exhibit B.

[29] <u>See</u> United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 3 & n.1, Exhibit A.  The total amount of the refund, including interest allowed to the Estate, was $30,108.47.  <u>Id.</u>

[30] <u>Estate of Smith v. Comm'r of Internal Revenue</u>, 123 T.C. 15, 16 (2004).

[31] <u>Id.</u> at 19.

[32] <u>Id.</u> at 31 (footnote omitted).

The Commissioner appealed the Tax Court's decision.  In Estate of Smith III, the Fifth Circuit vacated the Tax Court's judgment, holding that the Tax Court did not have jurisdiction to "order[] the Commissioner not to offset the refund against the [underpayment interest] liability."[33]  Smith, as the executor of the Estate, then filed this action against the United States in district court, again asserting that the Estate is entitled to an additional $85,336.83, plus interest, pursuant to the Tax Court's January 24, 2002, order.[34]

The United States responds that the plaintiff's complaint is barred by res judicata and collateral estoppel.[35]  Alternatively, the United States asserts that the Tax Court's judgment has been paid in full, and thus Smith is not entitled to relief.[36]  After adequate time for discovery, both parties now contend that they are entitled to Summary Judgment.[37]

---

[33] Estate of Smith v. Comm'r of Internal Revenue (Estate of Smith III), 429 F.3d 533, 539 (5th Cir. 2005).

[34] Plaintiff's Original Complaint, Docket Entry No. 1 at 8.

[35] United States' Answer to Plaintiff's Original Complaint, Docket Entry No. 5 at 1.

[36] Id.

[37] See Plaintiff's Motion for Summary Judgment, Docket Entry No. 11; United States Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13.

## II. <u>Summary Judgment Standard</u>

Summary judgment is warranted if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). An examination of substantive law determines which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under the governing law." <u>Id.</u>  A material fact creates a genuine issue if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  <u>Id.</u> at 2511.  Rule 56(c) authorizes summary judgment against a party who fails to make a showing adequate to establish the essential elements of that party's case.  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).

Where, as here, both parties have moved for summary judgment, both "motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).  The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues.  <u>Celotex Corp.</u>, 106 S. Ct. at 2553; <u>see also</u> <u>Wallace v. Tex. Tech Univ.</u>, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  Once the movant makes this showing,

the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that summary judgment is not warranted because genuine fact issues exist.  Celotex Corp., 106 S. Ct. at 2552.

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products Inc., 120 S. Ct. 2097, 2110 (2000). But, conclusory claims, unsubstantiated assertions, or insufficient evidence will not satisfy the nonmovant's burden. Wallace, 80 F.3d at 1047.  If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate.  Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992).

## III. Analysis

**A. Res Judicata**

The United States asserts that Smith's claim is precluded by the principle of res judicata.  It contends that the issue raised by Smith's complaint "has already been decided by the Fifth Circuit Court of Appeals in Estate of Smith v. Commissioner [(Estate of Smith III)], 429 F.3d 533 (5th Cir. 2005)."[38]  This decision,

---

[38] United States Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 6.

reasons the government, "bars relitigation of this issue in this court."[39]

The term "res judicata" has been interpreted to encompass the two doctrines of claim preclusion and issue preclusion.  <u>Kaspar Wire Works, Inc. v. Leco Eng'g & Mach.</u>, 575 F.2d 530, 535-36 (5th Cir. 1978) (explaining that "res judicata . . . actually comprises two doctrines concerning the preclusive effect of a prior adjudication," and describing both claim preclusion and issue preclusion).  Under the doctrine of claim preclusion, "when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a 'bar.'"  <u>Id.</u> at 535 (citing <u>Angel v. Bullington</u>, 67 S. Ct. 657 (1947)).  The preclusive effect of the judgment applies to "all issues relevant to the same claim between the same parties" even if particular issues were not raised or adjudicated in the previous action.  <u>Id.</u>  Issue preclusion, on the other hand, "bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties."  <u>Id.</u> at 535-36.

The United States' summary judgment motion recites the law only for the claim preclusion doctrine.[40]  But, by focusing on individual issues decided by the Fifth Circuit in <u>Estate of Smith</u>

---

[39] <u>Id.</u>

[40] <u>See</u> United States Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 6-8.

III, it asserts issue preclusion arguments.[41]  The court, therefore,
considers the potential applicability of both doctrines.

    1. Claim Preclusion

    The doctrine of claim preclusion bars the adjudication of a
claim or cause of action that could have been raised in prior
litigation if

> (1) The parties are identical or in privity; (2) the
> judgment in the prior action was rendered by a court of
> competent jurisdiction; (3) the prior action was
> concluded to a final judgment on the merits; and (4) the
> same claim or cause of action was involved in both
> actions.

In re Southmark Corp., 163 F.3d 925, 934 (5th Cir. 1999) (quoting
Swate v. Hartwell, 99 F.3d 1282, 1286 (5th Cir. 1996)).  The United
States argues that all four elements are satisfied by the Fifth
Circuit's ruling in  Estate of Smith III.[42]  Smith responds that the
third element, which requires that the prior action be concluded
with a final judgment on the merits, is not satisfied.[43]  The court
agrees with Smith.

    In the previous litigation, the Fifth Circuit did not rule on
the merits of the Estate's claim.  Instead, it held only that the

---

[41] See, e.g., id. at 6 ("The exact same issue that was
presented to the Fifth Circuit is being raised once again by the
Estate in this present litigation.").

[42] United States Response to Plaintiff's Motion for Summary
Judgment and United States' Cross Motion for Summary Judgment,
Docket Entry No. 13 at 7-8.

[43] Plaintiff's Reply to Defendant's Response to Plaintiff's
Motion for Summary Judgment, Docket Entry No. 14 at 2-3.

Tax Court was without jurisdiction to review the underpayment
interest offset made by the Commissioner against the Estate's tax
overpayment.  Estate of Smith III, 429 F.3d at 534, 539.  A holding
that a court lacks jurisdiction does not constitute a final
judgment on the merits.  See Darlak v. Bobear, 814 F.2d 1055, 1064
(5th Cir. 1987) ("'''A dismissal for want of jurisdiction bars
access to federal courts and is res judicata only of the lack of a
federal court's power to act.  It is otherwise without prejudice to
the plaintiff's claims, and the rejected suitor may reassert his
claim in any competent court.'") (quoting Voison's Oyster House,
Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986)).  Therefore, the
elements for claim preclusion are not satisfied, and Smith is not
barred from bringing his cause of action in this court.

    2. Issue Preclusion

    "The criteria for issue and claim preclusion are different, .
. . and one rule may apply when the other does not."  In re
Southmark, 163 F.3d at 932.  Issue preclusion bars the re-
adjudication of a particular issue if

        (1) the issue at stake [is] identical to the one involved
        in the prior action; (2) the issue [has] been actually
        litigated in the prior action; and (3) the determination
        of the issue in the prior action [was] a part of the
        judgment in that earlier action.

Id.  The United States contends that the issue presented by this
litigation is "whether the Commissioner can credit an overpayment,
previously determined by the Tax Court in accordance with the
parties' agreed computation, against properly assessed (but unpaid)

interest that had accrued before the overpayment arose."[44]   The government asserts that this issue has already been litigated in Estate of Smith III, and may not now be revisited by this court.[45] The court is not persuaded by the government's argument.

In Estate of Smith III, the Fifth Circuit held that the Tax Court had violated the explicit jurisdictional limitation of I.R.C. § 6512(b)(4) by reviewing the interest offset made by the Commissioner.[46]   Estate of Smith III, 429 F.3d at 539.   In reaching that holding the Fifth Circuit necessarily concluded that the Tax Court's January 24, 2002, order regarding the Estate's overpayment of estate tax did not consider "the Estate's liability for underpayment interest . . . ." Id.   Therefore, instead of deciding the issue presented in this case, the Fifth Circuit merely concluded that the issue had not been decided by the Tax Court in January 2002 and was beyond the jurisdiction of the Tax Court to decide in July 2004.

_____

[44] United States Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 1.

[45] Id. at 1, 6.

[46] I.R.C. § 6512(b)(4) provides: "The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402."   I.R.C. § 6512(b)(4).

Yet, as the government points out,[47] the Fifth Circuit's opinion in Estate of Smith III included the statement that "[t]he Commissioner properly exercised his authority under § 6402 to offset the unpaid interest against the overpayment of tax."[48] Estate of Smith III, 429 F.3d at 539.  This statement could be interpreted as a determination that the Estate owed a particular amount of unpaid underpayment interest and that the Commissioner correctly offset the Estate's tax overpayment by that amount.  It was not necessary to the ultimate holding, however, for the Fifth Circuit to decide whether the Estate owed underpayment interest at the time of the offset or how much that amount might have been.  It was enough for the court to determine that the Tax Court's January 2002 order did not decide the Estate's liability for underpayment interest, that the Commissioner had made an offset for underpayment interest, and that the Tax Court had improperly reviewed the offset.  This court therefore concludes that the statement of the

---

[47]  United States Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 8.

[48]  I.R.C. § 6402(a) provides:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

I.R.C. § 6402(a).

Fifth Circuit on which the government relies was dicta.[49]   See
Michael Abramowicz & Maxwell Stears, Defining Dicta, 57 STAN. L.
REV. 953, 1065 (2005) ("A holding consists of those propositions
along the chosen decisional path or paths of reasoning that (1) are
actually decided, (2) are based upon the facts of the case, and (3)
lead to the judgment. If not a holding, a proposition stated in a
case counts as dicta.").

As dicta, the statement was not part of the judgment, and
issue preclusion does not apply.   See In re Southmark, 163 F.3d at
932.  Because the issue presented in this case was not decided by
the Fifth Circuit in Estate of Smith III, the doctrine of issue
preclusion does not apply.   The court may therefore consider the
merits of Smith's claim.

## B. The Merits

### 1. Undisputed Facts

After years of litigation involving multiple appeals and
multiple tax and interest calculations, the material facts of this
case are no longer in dispute.   The parties do not dispute that,
pursuant to the January 2002 agreed Computation for Entry of
Decision, they agreed that the total estate tax liability was
$385,747.17 and concurred that the total underpayment interest

---

[49] A more likely explanation of this statement is that the
Fifth Circuit was simply trying to convey that if there was, in
fact, an amount of properly assessed but unpaid interest, the
Commissioner clearly had authority under § 6402 to make an offset
against the tax overpayment.

obligation was $209,943.54.[50]   Therefore, the Estate's total
liability to the government was fixed at $595,690.71.   Smith
recites these numbers verbatim in his complaint and in his motion
for summary judgment.[51]

The parties also agree that the Estate made two payments to
the government in the amounts of $60,164.54 and $646,325.76,
respectively, and that the Estate received a credit transfer
payment in the amount of $63,052.00 for an overpayment of income
tax.[52]  The sum of the two payments and the credit is $769,542.30.
Therefore, the total amount paid by the Estate, $769,542.30,
exceeds the total amount owed by the Estate, $595,690.71, by
$173,851.59.

------

[50] See Plaintiff's Original Complaint, Docket Entry No. 1 at
4 ("On May 12, 2002, the stipulated tax deficiency of $385,747.17
plus statutory interest of $209,943.54, totaling $595,690.71, had
been paid in full . . . ."); United States' Response to Plaintiff's
Motion for Summary Judgment and United States' Cross Motion for
Summary Judgment, Docket Entry No. 13 at 2.

[51] Plaintiff's Original Complaint, Docket Entry No. 1 at 4 ("On
May 12, 2002, the stipulated tax deficiency of $385,747.17 plus
statutory interest of $209,943.54, totaling $595,690.71, had been
paid in full . . . ."); Plaintiff's Motion for Summary Judgment,
Docket Entry No. 11 at 4 ("The stipulated tax deficiency filed on
January 24, 2002 of $385,747.17, plus statutory interest of
$209,943.54, totaling $589,690.71, had been paid in full by The
Estate's undisputed payment of $646,325.76 made on March 31,
1998.").

[52] See Plaintiff's Original Complaint, Docket Entry No. 1 at
5 (listing these three amounts); United States' Answer to
Plaintiff's Original Complaint, Docket Entry No. 5 at 2 (admitting
the allegations regarding the payments made by the Estate).

It is further undisputed that the Commissioner issued a refund to the Estate for overpayment of estate taxes in the amount of $153,510.41, plus interest, on May 13, 2002.[53]  The United States asserts, and Smith does not deny, that the Commissioner issued another refund in the amount of $20,341.20, plus interest, on October 6, 2003.[54]  The Estate has thus received refunds totaling $173,851.59, plus interest.  This is the same amount by which the Estate's total payments exceeded its total liability.

The parties further agree that the $646,325.76 payment made by the Estate on March 31, 1998, was allocated partially to estate tax liability and partially to underpayment interest liability.[55]  It is undisputed that $501,377.87 was allocated to the Estate's tax liability and the remaining $144,947.89 was allocated to the Estate's underpayment interest liability.[56]  Smith presents this

---

[53] See Plaintiff's Original Complaint, Docket Entry No. 1 at 5; United States' Answer to Plaintiff's Original Complaint, Docket Entry No. 5 at 2 (admitting Smith's allegations regarding the $153,510.41 refund).

[54] United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 3.  Smith does not address the $20,341.20 refund in any of his motion papers.  The Tax Court stated that this second refund was issued, Estate of Smith, 123 T.C. at 18-19, as did the Fifth Circuit.  Estate of Smith III, 429 F.3d at 536.

[55] See Affidavit of Harold A. Chamberlain In Support of Motion for Summary Judgment at 2 (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2.

[56] See Affidavit of Harold A. Chamberlain In Support of Motion
(continued...)

exact allocation as summary judgment evidence in the affidavit of his counsel, which is attached to his motion for summary judgment.[57]

The January 2002 agreed computation was based on this undisputed allocation of the March 31, 1998, payment. As the agreed computation reflects, the Estate had paid $624,594.41[58] toward its estate tax liability of $385,747.17—an overpayment of $238,847.24. But, this inexorably leads to the conclusion that the Estate had only paid $144,947.89 toward its underpayment interest obligation of $209,943.54—an underpayment of $64,995.65. The difference between the estate tax overpayment decreed by the Tax Court, $238,847.24, and the total amount refunded, $173,857.59, equals $64,995.65. This amount, which has been retained by the IRS, is the exact amount of underpayment interest that had not yet been paid as of January 24, 2002.

2. Analysis

Based on the undisputed facts, the Estate has not paid more in tax and underpayment interest than the total amount that it owed.

---

[56](...continued)
for Summary Judgment at 2 (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11); United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 2.

[57] Affidavit of Harold A. Chamberlain In Support of Motion for Summary Judgment at 2 (attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 11).

[58] $60,164.54 + $63,052.00 + $501,377.87 = $624,594.41

20

Nevertheless, Smith seeks an additional $85,336.83 refund for the Estate.

Smith asserts that because the sum of payments made by the Estate as of January 24, 2002, exceeded the sum of agreed estate tax and underpayment interest liability, there could have been no remaining estate tax or underpayment interest obligation with which the Commissioner could have offset the decreed $238,847.24 estate tax overpayment.[59]  Therefore, he argues, the Estate is entitled to receive a refund for the entire $238,847.24.[60]  He contends that because the Commissioner has only paid $153,510.41 to date, the Commissioner still owes the Estate $85,336.83.[61]  As statutory authority for his contention that the Estate is entitled to an additional refund, Smith relies on I.R.C. § 7486, which provides:

> In cases where assessment or collection has not been stayed by the filing of a bond, then if the amount of the deficiency determined by the Tax Court is disallowed in whole or in part by the court of review, the amount so disallowed shall be credited or refunded to the taxpayer, without the making of claim therefor, or, if collection has not been made, shall be abated.

I.R.C. § 7486.

The United States responds that the Estate agreed that its total underpayment interest obligation was $209,943.54 knowing that

---

[59] Plaintiff's Brief in Support of Motion for Summary Judgment, Docket Entry No. 12 at 5.

[60] *Id.* at 7.

[61] *Id.* at 4.  Smith does not address the October 6, 2003, refund issued by the Commissioner for $20,341.20, plus interest.

only $144,947.89 of the payments made had been allocated toward underpayment interest.[62]   Therefore, argues the government, Smith should not now be allowed to claim that the underpayment interest obligation had been satisfied in full.[63]   The United States further asserts that the record clearly shows that the Estate owed an additional $64,995.65 in underpayment interest, which the Commissioner was entitled to offset against the Estate's tax refund.[64]   The government therefore contends that the Estate is not entitled to an additional refund and that such a refund, if ordered, would amount to a windfall.[65]

Smith correctly asserts that the sum total of payments made by the Estate as of January 24, 2002, exceeded the sum of agreed estate tax and underpayment interest liability.   As of January 24, 2002, the Estate had made payments totaling $769,542.30, and the Estate and Commissioner had agreed that the Estate owed a total of $595,690.71 in tax and underpayment interest.   But, these facts do not necessarily lead to the conclusion that Smith draws from them. Just because the total amount paid exceeds the total amount owed does not mean that there could be no unpaid obligation against

---

[62] United States' Response to Plaintiff's Motion for Summary Judgment and United States' Cross Motion for Summary Judgment, Docket Entry No. 13 at 9.

[63] Id.

[64] Id.

[65] Id.

which the Commissioner could offset the tax overpayment.  The Estate's total obligation consists of two components—tax and interest—which were each accounted for separately.  As the Fifth Circuit held in Estate of Smith III, the Tax Court's January 24, 2002, order only decided the tax component of the total obligation. Estate of Smith III, 429 F.3d at 539.  Because of the way the Estate's March 31, 1998, payment had been allocated, the Estate had a surplus for the tax component of $238,847.24.  But, because the March 31, 1998, payment had been heavily allocated toward the tax obligation, the Estate still had a deficit for the underpayment interest component of the total obligation.  To be precise, the Estate had a $64,995.65 deficit.

Therefore, there was an assessed but unpaid underpayment interest obligation against which the Commissioner could and did offset the Estate's $238,847.24 estate tax overpayment.  The Commissioner complied with I.R.C. § 7486 by "credit[ing] . . . to the taxpayer" the $64,995.65 to satisfy the remaining interest obligation and by "refund[ing] to the taxpayer" the remaining $173,857.59, plus interest.  I.R.C. § 7486.  See also I.R.C. § 6402(a) (providing that the Commissioner "may credit the amount of [an] overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and . . . refund any balance to such person").

Based on the undisputed facts, the Estate is not entitled to any additional refund.  Accordingly, the United States is entitled to judgment as a matter of law.

### IV.  <u>Conclusion and Order</u>

Based on the foregoing analysis, plaintiff James Allen Smith's Motion for Summary Judgment (Docket Entry No. 11) is **DENIED** and defendant the United States of America's Cross Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 24th day of September, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

24